UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

DUSAN DENKIC,

    Plaintiff,

v.

MARELLA CRUISES LIMITED COMPANY,

COLUMBIA CRUISE SERVICES GMBH & CO. KG, and

CREWS' PEOPLE INTERNATIONAL (GUERNSEY) LIMITED,

    Defendants.
_____/

## SEAMAN'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and alleges:

1. Plaintiff, DUSAN DENKIC, is a citizen and resident of Serbia, and a Jones Act seaman within the meaning of 28 U.S.C. § 1916, who is permitted to file this lawsuit without paying the filing fee or costs.

2. Defendant, MARELLA CRUISES LIMITED COMPANY (hereinafter "MARELLA"), is a business entity registered to do business in Florida and amenable to service of process through its Florida registered agent: URS Agents, LLC, 3458 Lakeshore Dr., Tallahassee, FL 32312.

    a. MARELLA owns and operates cruise ships, some of which like the *Marella Discovery* upon which Plaintiff served, call at port within Florida.

3. Defendant, COLUMBIA CRUISE SERVICES GMBH & CO. KG (hereinafter "COLUMBIA"), is a Germany company. COLUMBIA is engaged in a Florida-based joint venture

1

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

with MARELLA. MARELLA is COLUMBIA's Florida-based agent, and therefore, COLUMBIA may be served with process by service upon MARELLA.

    a. COLUMBIA co-owns and co-operates cruise ships, including the *Marella Discovery* upon which Plaintiff served, which calls at port within Florida.

4. Defendant, CREWS' PEOPLE INTERNATIONAL (GUERNSEY) LIMITED (hereinafter "CREW"), is a Guernsey company. CREW is engaged in a Florida-based joint venture with MARELLA and COLUMBIA. MARELLA is CREW's Florida-based agent, and therefore, CREW may be served with process by service upon MARELLA.

    a. CREW is a hiring agent for MARELLA and COLUMBIA, in that it selects and hires crewmembers to work aboard cruise ships co-owned and co-operated by MARELLA and COLUMBIA.

5. At all times material to this action, MARELLA, COLUMBIA and CREW engaged in a Florida-based joint venture, the objective of which is to own and operate cruise ships for passenger vacations, for profit. For example, MARELLA contributed money and other financial resources to the joint venture, and COLUMBIA and CREW contributed their expertise and trade secrets in the cruise ship industry, in furtherance of the joint venture to own and operate cruise ships for passenger vacations. MARELLA, COLUMBIA and CREW shared in the joint venture's profits and losses. For example, if the joint venture is successful, MARELLA, COLUMBIA and CREW earn money; and if the joint venture is not successful, MARELLA lost money ventured, and COLUMBIA and CREW lost time and expertise spent in the venture. All shared proprietary information and property concerning the joint venture, for example, cruise ship customer lists. All shared control over the joint venture, for example, the itinerary for the cruise vacations and operational aspects (i.e. manning crewmembers) for the cruise ships under common management and control.

6. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction, 28 U.S.C. § 1333, as this lawsuit arises from a maritime tort that occurred over navigable waters.

7. This Court has personal jurisdiction over Defendants because, at all times material hereto, Defendants personally or through an agent(s):

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Was engaged in substantial business activity within this state;

   c. Operated vessels in the waters of this state;

   d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

   e. The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

8. Defendants are subject to the jurisdiction of the courts of this state.

9. The causes of action asserted in this Complaint arise under the Jones Act, 46 USC 30104, and the General Maritime Law of the United States. Notwithstanding the application of General Maritime Law and, pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on all claims asserted herein.

## PRELIMINARY ALLEGATIONS

10. At all times material hereto, Defendants jointly owned, operated, managed, maintained, and/or controlled the subject vessels upon which Plaintiff served, the *Marella Discovery* and *Marella Discovery II*, and operated same under flags of convenience.

11. At all times material hereto, Defendants jointly operated the vessels in navigable waters.

12. At all times material hereto, Plaintiff was member of the vessels' crew and was employed by Defendants as a seaman who lived and worked aboard the *Marella Discovery* and *Marella Discovery II* in the capacity of a Destination Services Advisor.

13. At all times material hereto, the Plaintiff held the status of a Jones Act seaman, as contemplated by 46 USC 30104, vis-à-vis the vessels and Defendants.

14. At all times material, Defendants collectively and/or jointly employed Plaintiff, as all three controlled his work aboard the vessel. For example, and more specifically, CREW hired Plaintiff, but COLUMBIA paid his paid his wages. Further, both COLUMBIA and MARELLA controlled his work aboard the vessel by setting the policies and procedures he was to follow while working aboard the vessel. However, all three Defendants had the ability to terminate Plaintiff's employment. And, all three Defendants collectively employed the other crewmembers aboard the vessel.

15. On or about April 22, 2022, Plaintiff was working aboard the *Marella Discovery* as a Destination Services Advisor, and was assigned by Defendants to investigate an excursion Defendants offered to their passengers in Spain. During this assignment, Plaintiff slipped and fell while performing his duties as a crewmember and injured his back.

16. The dangerous conditions which caused and/or contributed to Plaintiff's incident and resulting injuries include, but are not limited to:

    a. Defendants did not give Plaintiff reasonably safe footwear. To provide Plaintiff with a reasonably safe place to work, as required by law, Defendants should have provided Plaintiff reasonably safe footwear he needed to traverse diverse terrain at which Defendants assigned him to work; however, Defendants did not give Plaintiff

any footwear, or reasonably safe footwear. Had Plaintiff been given safe footwear, he would not have slipped while working for Defendants and become injured.

17. On or about January 27, 2023, and on his following contract with Defendants aboard the *Marella Discovery II*, Plaintiff's back injury became worse as a result of his continued work for Defendants. Plaintiff brought his back issues to the attention of Defendants' shipboard doctor, and Plaintiff requested reasonable accommodations to his work assignments, so his back injury would not become worse.

18. However, Defendants caused Plaintiff's back injury to become worse because they: i) prescribed him painkillers, which only masked Plaintiff's pain and underlying injury, without curing the underlying medical issue; and ii) assigned Plaintiff job duties which included working aboard the vessel for eight or more hours each day, on his feet, delivering letters to passengers' stateroom cabins. This intense work Plaintiff was required to perform did not constitute a reasonable accommodation for his back injury, which made his back injury worse. Plaintiff performed this new shipboard assignment for over five days, and each day, he went to the ship's medical department to consult with the shipboard doctor with respect to his increasing back pain, who only gave Plaintiff more painkillers.

19. Ultimately, Plaintiff was medically disembarked from the vessel, underwent MRI imaging shoreside, and was diagnosed with an L5-S1 back herniation with nerve root compromise. Plaintiff has since been recommended for spinal fusion surgery. However, Defendants have refused to authorize and/or pay for Plaintiff to receive this medical treatment/surgery, which is curative in nature, as the surgery is intended to reduce Plaintiff's chronic back pain, improve his function, and allow him to return to some, albeit limited, gainful employment.

20. At present, Plaintiff remains injured, and has yet to achieve maximum medical improvement ("MMI") for his medical condition(s).

21. At all times material, Defendants are and were under obligations at law and contract to provide Plaintiff maintenance and cure and/or medical treatment, until he achieves MMI. However, Defendants have failed to provide Plaintiff maintenance and cure and/or medical treatment to which he is entitled; and this has caused Plaintiff additional and/or aggravated back injury.

22. As a result of Plaintiff's injuries, he is permanently impaired with respect to his bodily function, and is permanently unable to return to his profession as a seafarer aboard cruise ships. Plaintiff now suffers permanent injuries, limitations and disability.

## COUNT I – JONES ACT NEGLIGENCE AND/OR GENERAL NEGLIGENCE AGAINST DEFENDANTS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

23. Under the Jones Act, Defendants owed the Plaintiff a duty to provide a reasonably safe place to work, including a duty to provide prompt, proper and adequate medical treatment shipboard and shoreside. *See e.g. Rannals v. Diamond Jo Casino*, 265 F.3d 442, 455 (6th Cir. 2001); *Joseph v. Omega Protein, Inc.*, 2008 WL 4938504, at *4 (E.D. La. 2008); *Central Gulf S.S. v. Sambula*, 405 F.2d 291 (5th Cir. 1968)); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670 (2d Cir. 1971).

24. On or about the above dates, Plaintiff was injured due to the fault and negligence of Defendants and/or its agents, servants, and/or employees due to negligent acts that include, but are not limited to:

    a.  Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work;

    b.  Failure to provide Plaintiff with reasonably safe footwear;

    c. Failure to recommend Plaintiff reasonably safe footwear;

    d. Failure to reasonably warn Plaintiff of the dangerous conditions associated with the places Defendants assigned Plaintiff to travel;

    e. Failure to give Plaintiff reasonable work accommodations in light of his injury/ies;

    f. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's injuries;

    g. Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside;

    h. Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care;

    i. Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care;

    j. Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured, shipboard and shoreside;

    k. Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay;

    l. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work.

25. Defendants knew of the foregoing conditions causing Plaintiff's injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

26. As a result of Defendants' negligence, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, lost income in the past, and his working ability and earning capacity

have been impaired. The injuries and damages suffered by the Plaintiff are permanent and/or continuing in nature and Plaintiff will suffer these losses and impairments in the future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that came with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation pay, the ability to make extra money doing side jobs and free airline transportation to the vessel and back home each contract.

**WHEREFORE,** Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

## COUNT II – UNSEAWORTHINESS AGAINST MARELLA AND COLUMBIA ONLY

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

27. At all times material hereto, Defendants MARELLA and COLUMBIA jointly owned, managed, operated, and controlled the vessels *Marella Discovery and Marella Discovery II*.

28. Defendants had the absolute non-delegable duty to provide Plaintiff with a seaworthy vessel on which to serve, including a competent crew.

29. The unseaworthiness of Defendants' vessels was a legal cause of injury and damage to the Plaintiff by reason of the following:

   a. The vessel was not reasonably fit for its intended purpose;

   b. The vessel's crew, including Defendants' shipboard doctors, were not properly trained, instructed and/or supervised;

   c. Defendants created an unsafe working environment;

   d. The vessels' medical personnel were not properly trained, monitored and/or supervised to promptly, properly, and adequately diagnose and treat Plaintiff's injury;

    e.  The vessels failed to carry and utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care;

    f.  The vessel failed to carry and utilize proper and adequate medical equipment with respect to treating Plaintiff's condition; and/or

    g.  The vessel failed to carry and utilize properly trained medical providers to medically manage Plaintiff's medical care after she was injured.

30. As a result of the unseaworthiness of the vessel, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, lost income in the past, and plaintiff's working ability and earning capacity have been impaired. These injuries and damages are permanent and/or continuing in nature and Plaintiff will suffer these losses and impairments in the future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation pay, the ability to make extra money doing side jobs and free airline transportation to the vessel and back home each contract.

**WHEREFORE,** Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

## COUNT III – FAILURE TO PROVIDE MAINTENANCE AND CURE AGAINST DEFENDANTS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

31. On or about the above dates, Plaintiff was injured while in the service of the vessels as a Jones Act seaman.

32. Under the General Maritime Law, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendants, his employers, until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance and cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer. In addition, an MMI declaration must be unequivocal, and if not, any doubts or controversy, regarding whether or not the seaman is at MMI must be resolved in favor of the seaman.

33. To date, Plaintiff has not achieved MMI for all injuries and medical conditions that have arisen in connection with Plaintiff's shipboard work for Defendants. *See e.g. Duarte v. Royal Caribbean Cruises, Ltd.* 761 So.2d 367 (Fla. 3d DCA 2000). As such, Plaintiff is entitled to receive medical treatment from physicians of his choice at Defendants' expense until he achieves MMI for all injuries and medical conditions that have manifested as a result of and in connection with Plaintiff's shipboard work for Defendants.

34. At all times material hereto, Defendants willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure, and/or Defendant) willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI, so that Plaintiff has become obligated to pay the undersigned a reasonable attorney's fee.

35. At all times material hereto, Defendants' failure to provide Plaintiff's entire maintenance and cure is willful, arbitrary, capricious, in violation of the law, and in callous disregard for Plaintiff's right as a seaman. As such, Plaintiff is entitled to attorney's fees under the General Maritime Law of the United States.

36. At all times material hereto, Defendants' unreasonable and/or callous failure to pay or provide Plaintiff with maintenance and cure aggravated Plaintiff's condition and caused him to suffer additional compensatory damages, including, but not limited to, the aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past and into the future.

**WHEREFORE,** Plaintiff demands all damages entitled by law, attorneys' fees and demands jury trial of all issues so triable.

## COUNT IV – FAILURE TO TREAT AGAINST DEFENDANTS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

37. On or about the above date, Plaintiff was employed by Defendants as a seaman and was a member of the vessel's crew.

38. It was the duty of Defendants to provide Plaintiff with prompt, proper and adequate medical care shipboard and shoreside. *Central Gulf S.S. v. Sambula*, 405 F.2d 291 (5th Cir. 1968); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670 (2d Cir. 1971).

39. Defendants, through the conduct of its shoreside medical department and/or the shipboard and shoreside physicians and/or nurses it selected, contracted with and/or approved to treat Plaintiff, negligently failed to provide Plaintiff with prompt, proper, adequate, and complete medical care through negligent acts and/or omissions that include, but are not limited to:

   a. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's injuries;

b. Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside;

c. Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care;

d. Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care;

e. Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured, shipboard and shoreside;

f. Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay.

40. As a direct and proximate result of Defendants' negligence, Plaintiff suffered additional and/or aggravated injury, pain, disability and Plaintiff's recovery was prolonged. In addition, the Plaintiff was injured about plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred additional medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and plaintiff's working ability and earning capacity have been impaired. These injuries and damages are permanent or continuing in nature, and Plaintiff will suffer these losses and impairments in the future.

41. This Count is alleged separately from Jones Act Negligence pursuant to *Joyce v. Atlantic Richfield Company*, 651 F. 2d 676 (10th Cir. 1981) which states, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

**WHEREFORE,** Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

### **COUNT V – CONTRACTUAL DISABILITY CLAIM AGAINST DEFENDANTS**

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through twenty-two (22) as though originally alleged herein.

42. Pursuant to the employment agreement(s) between Defendants and Plaintiff, Plaintiff is entitled to contractual damages, without prejudice to his claim in tort, in the event that he suffers a permanent disability and/or is unable to return to his profession as a seafarer as a result of an injury sustained during the course of her employment with Defendants.

43. As a result of the injuries outlined above, Plaintiff suffered a permanent disability and/or lost his ability to return to his profession as a seafarer.

44. Plaintiff demanded the maximum applicable disability payment provided by the employment agreement(s) between Plaintiff and Defendants, in addition to, and irrespective of, his rights and causes of action available under the Jones Act and/or General Maritime Law, but Defendants have refused to tender the agreed-to benefit.

**WHEREFORE,** Plaintiff demands all damages entitled by law and contract.

Dated: July 10, 2023

    Respectfully submitted,

    LIPCON, MARGULIES,
    & WINKLEMAN, P.A.
    *Attorneys for Plaintiff*
    2800 Ponce de Leon Blvd.
    Suite 1480
    Coral Gables, FL 33134

        Telephone: (305) 373-3016
        Facsimile: (305) 373-6204

By: */s/ L. Alex Perez*
    **JASON R. MARGULIES**
    Florida Bar No. 57916
    jmargulies@lipcon.com
    **L. ALEX PEREZ**
    Florida Bar No. 125452
    aperez@lipcon.com

14

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .